UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TIMOTHY EUGENE SAMPSON, # 492307,

                Petitioner,                      Case No. 18-CV-10020
                                                  Honorable Thomas L. Ludington

v.

CONNIE HORTON,

                Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING CERTIFICATE OF APPEALABILITY, DENYING PETITIONER'S MOTIONS, AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS***

Petitioner Timothy Eugene Sampson, a Michigan prisoner, has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges his convictions for first-degree murder, Mich. Comp. Laws § 750.316, conspiracy to commit first-degree murder, §§ 750.157a, 750.316, being a felon in possession of a firearm, § 750.224f, and possession of a firearm during the commission of a felony, § 750.227b. Sampson raises nine claims for relief. For the reasons set forth below, the Court will deny the petition for writ of habeas corpus and decline to issue a certificate of appealability.

**I.**

Sampson was tried jointly before a single jury with co-defendants Donald Warner and Donald Cummings. The Michigan Court of Appeals summarized the relevant evidence adduced at trial:

> Defendants' convictions arise from the death of Brandon Buck, whose unrecognizable body was discovered inside a burning minivan during the early morning hours of April 18, 2011. In September 2011, a witness, Ayesha White, came forward and reported observing the events that led to Buck's death. White

was the only witness to the events, and was the only reason authorities were able to determine whose body was found in the van. White stated that she was present when Warner, at Sampson's direction, shot Buck. Afterward, Cummings obtained a minivan and Buck's body was placed inside, and then Cummings poured gasoline inside the minivan and set it on fire. An autopsy determined that Buck was already dead before the fire, having died from multiple gunshot wounds.

*People v. Warner*, No. 311034, 2014 WL 2553303, at *1 (Mich. Ct. App. June 3, 2014).

Following a jury trial in Wayne County Circuit Court, Sampson was convicted and sentenced as a fourth habitual offender to concurrent terms of life imprisonment for the first-degree murder, conspiracy, and solicitation convictions, and two to five years for the felon-in-possession conviction, to be served consecutively to a two-year term of imprisonment for the felony-firearm conviction. *Id.*

Sampson appealed his convictions to the Michigan Court of Appeals and moved to remand for an evidentiary hearing regarding an ineffective assistance of counsel claim. The Michigan Court of Appeals granted the motion to remand for an evidentiary hearing and decision on whether Sampson was denied the effective assistance of counsel. *People v. Sampson*, No. 315252 (Mich. Ct. App. July 19, 2013) (ECF No. 8-18 at PageID.1661).

The trial court held an evidentiary hearing over the course of three days. The court concluded that Sampson was not denied his right to counsel such that prejudice would be presumed under *United States v. Cronic*, 466 U.S. 648 (1984), and that Sampson was not prejudiced by counsel's performance. ECF No. 8-17 at PageID.1598–1603.

Following the remand, the Michigan Court of Appeals held (and the prosecution conceded) that insufficient evidence supported Sampson's solicitation of murder conviction. *Warner*, 2014 WL 2553303 at *6. The state court vacated the solicitation conviction and sentence and affirmed

Sampson's convictions in all other respects. *Id.* at *13. The Michigan Supreme Court denied leave to appeal. *People v. Sampson*, 497 Mich. 889 (Mich. Oct. 28, 2014).

Sampson then filed a motion for relief from judgment in the trial court. The trial court denied the motion. *People v. Sampson*, No. 11-011795-02-FC (Wayne County Cir. Ct. Nov. 11, 2015) (ECF No. 8-22). The Michigan Court of Appeals and Michigan Supreme Court denied Sampson leave to appeal. *People v. Sampson*, No. 331229 (Mich. Ct. App. May 10, 2016); *People v. Sampson*, 501 Mich. 858 (2017).

Sampson then filed the pending Habeas Corpus Petition. He raises the following claims, as articulated by the Michigan Attorney General (*see* ECF No. 7 at PageID.109–11):

> I. The trial court denied funds for an expert witness on the effects of ecstasy and alcohol on Ayesha White's ability to perceive and recall details of the offense, in violation of the Equal Protection and Due Process Clauses of the Fourteenth Amendment and the Confrontation Clause of the Sixth Amendment.
>
> II. There is insufficient evidence to support the convictions for first-degree premeditated murder and aiding and abetting first-degree premeditated murder, in violation of due process.
>
> III. The prosecutor made a civic-duty argument, in violation of the Due Process Clause of the Fourteenth Amendment.
>
> IV. The trial court refused to sever petitioner's trial from his co-defendant's trial, resulting in the introduction of irrelevant and unfairly prejudicial evidence, in violation of the Due Process Clause of the Fourteenth Amendment.
>
> V. The trial court denied petitioner his right to paid counsel of his choice, in violation of the Sixth Amendment.
>
> VI. The trial court closed the courtroom in violation of the Sixth Amendment.
>
> VII. Trial counsel was constitutionally ineffective for failing to (a) investigate, (b) stay awake at trial, (c) point out inconsistencies in Ayesha White's testimony, (d) properly advise petitioner regarding his right to testify, (e) object to prosecutorial misconduct, and (f) object to the courtroom closure, in violation of the Sixth Amendment.

3

VIII. Appellate counsel was constitutionally ineffective for failing to raise issues III, V, VI, VII(e)-(f) on direct appeal.

IX. The trial court and appointed appellate counsel refused to provide petitioner with a copy of the trial transcripts, in violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment and the Sixth Amendment right to the effective assistance of counsel.

**II**.

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A "federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

4

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings," and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Pursuant to section 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* at 102. A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence. *Id.* Moreover, for claims that were adjudicated on the merits in state court, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III.

### A.

In his first claim, Sampson argues that the trial court violated his right to due process by failing to appoint an expert witness to testify about the impact Ayesha White's use of alcohol and ecstasy would have had on her ability to perceive and recall details of the crime.

The Michigan Court of Appeals rejected Sampson's claim:

A trial court is not obligated to provide funding for the appointment of an expert witness on demand. Rather,

> [t]o obtain appointment of an expert, an indigent defendant must demonstrate a nexus between the facts of the case and the need for an expert. …. It is not enough for the defendant to show a mere possibility of assistance from the requested expert. … Without an indication that expert testimony would likely benefit the defense, a trial court does not abuse its discretion in denying a defendant's motion for appointment of an expert witness. …

White's credibility, as affected by her ability to accurately recall events, was a central issue in this case because she was the only eyewitness to the events. And, White admitted having consumed large amounts of alcohol and taken an Ecstasy pill on the day of the offense. The trial court was unwilling to appoint a toxicologist, however, because defendants admittedly had no toxicology reports showing how much drugs or alcohol were in White's system. Although defendants also asked the court to appoint a drug counselor who could offer expert testimony with respect to White's ability to recall events accurately, defendants never presented an offer of proof showing either what type of testimony a drug counselor could provide or even indicating that a drug counselor was qualified to offer testimony regarding the physical effects of alcohol or Ecstasy on a person's brain functioning or memory. The trial court expressed a willingness to reconsider the request for appointment of an expert if an appropriate showing was made, but defendants never renewed their request.

The trial court also correctly determined that defendants failed to demonstrate that they would not be able to adequately explore and develop this issue of White's drug and alcohol use as it related to her ability to perceive and recall events without the appointment of an independent expert. This absence of need was in large part due to the fact that at trial the parties were allowed to question the medical examiner, Dr. Schmidt, regarding the general effect of drugs and alcohol on a person's memory and perception. Dr. Schmidt stated that alcohol can compromise both memory and perception, and that when alcohol is combined with other drugs, it will make the effects of those substances more pronounced. He explained, however, that individuals metabolize or react differently to certain drugs, and that "[t]he only real way to assess how one reacts to alcohol is by actually witnessing the person drinking the alcohol."

Dr. Schmidt's testimony provided defendants with a scientific and medical basis for arguing to the jury that White's admitted use of Ecstasy and alcohol affected her ability to accurately perceive and recall the events surrounding the charged offense. Dr. Schmidt identified several factors that influence how drugs or alcohol will affect a particular person, including the physical size of the person, the length

6

of time the person has been consuming the substance, and whether the person's history of usage may have enabled the person to develop a tolerance for the substance, and defendants were permitted to explore all of these issues in their cross-examination of White, thus providing the jury with a basis (other than the jurors' own common sense) for evaluating the reliability of her testimony as measured by the factors identified by Dr. Schmidt. Defendants have not explained what additional testimony a different expert could have provided to assist the jury in its evaluation of White's ability to perceive and recall events. Accordingly, the trial court did not abuse its discretion by denying defendant Warner's and defendant Sampson's requests for the appointment of an expert witness.

*Warner*, 2014 WL 2553303, at *2–3.

The Michigan Court of Appeals' decision was not contrary to, or an unreasonable application of, clearly established federal law because there is no clearly established federal law requiring appointment of an expert witness in these circumstances. The Supreme Court requires states to provide access to a competent psychiatrist to assist the defense if the defendant's sanity at the time of the offense is a factor at trial. *Ake v. Oklahoma*, 470 U.S. 68, 83 (1985). But the Supreme Court has not extended this "right to the appointment of non-psychiatric expert witnesses." *See Davis v. Maclaren*, No. 17-2153, 2018 WL 4710071, at *3 (6th Cir. Apr. 3, 2018) (holding that "there is no clearly established right to the appointment of non-psychiatric expert witnesses or court appointed investigators"); *McGowan v. Winn*, No. 17-2000, 2018 WL 1414902, at *2 (6th Cir. Mar. 21, 2018) (holding that the Supreme Court has not expanded the rule of *Ake* to experts in pharmacology or toxicology). In *Caldwell v. Mississippi*, 472 U.S. 320, 323 n.1 (1985), the Court expressly declined to reach the issue whether the analysis set forth in *Ake* applies to the appointment of a criminal investigator, a fingerprint expert, or a ballistics expert. Because no clearly established Supreme Court precedent establishes Sampson's right to the appointment of an expert, the court of appeals' rejection of his claim is neither contrary to nor an unreasonable application of federal law as determined by the Supreme Court. Moreover, as pointed out by the

7

state court, Sampson fails to offer anything other than a conclusory allegation to show that an expert witness could have helped the defense. Accordingly, Sampson is not entitled to relief on this claim.

### B.

In his second claim, Sampson challenges the sufficiency of the evidence to support his first-degree murder and conspiracy to commit first-degree murder convictions. He maintains that White's testimony was so riddled with "contradictions, blatant lies, and outright impossibilities that, even viewing [her testimony] in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime[s] beyond a reasonable doubt." ECF No. 1 at PageID.6. The Michigan Court of Appeals reasonably concluded that sufficient evidence supported Sampson's convictions.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). "Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v. Konteh*, 567 F.3d 191, 204–05 (6th Cir. 2009)). First, the Court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Second, if the Court were "to conclude that a rational trier of fact could *not* have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Brown*, 567 F.3d at 205 (emphasis in

original). In short, "deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; [then] deference should be given to the [state court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008) (citation omitted). The *Jackson* standard is "exceedingly general" and therefore Michigan courts are afforded "considerable leeway" in its application. *Davis v. Lafler*, 658 F.3d 525, 535 (6th Cir. 2011).

Under Michigan law, to convict a defendant of first-degree premeditated murder, "the prosecution must prove that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate." *People v. Anderson*, 531 N.W.2d 780, 786 (Mich. Ct. App. 1995). Premeditation and deliberation may be established by evidence showing: "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *People v. Schollaert*, 486 N.W.2d 312, 318 (Mich. Ct. App. 1992).

To convict a defendant under an aiding and abetting theory, a prosecutor must show: "(1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or knew that the principal intended to commit the crime at the time he gave aid and encouragement." *Riley v. Berghuis*, 481 F.3d 315, 322 (6th Cir. 2007) (citing *People v. Carines*, 597 N.W.2d 130, 135 (1999)). A jury may infer an aider and abettor's state of mind by considering all the facts and circumstances, including "a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime." *Carines*, 597 N.W.2d 130. "The

amount of advice, aid or encouragement is not material if it had the effect of inducing the commission of the crime." *People v. Palmer*, 220 N.W.2d 393, 397 (Mich. 1974).

"Under Michigan law, anyone who knowingly agrees with someone else to commit first degree premeditated murder is guilty of conspiracy to commit first degree premeditated murder[,]." *Bechtol v. Prelesnik*, 568 F. App'x 441, 449 (6th Cir. 2014). Each of the conspirators must "have the intent required for murder and, to establish that intent, there must be foreknowledge of that intent." *People v. Hamp*, 312 N.W.2d 175, 180 (Mich. Ct. App. 1981).

The Michigan Court of Appeals held that the evidence presented supported Sampson's convictions for first-degree premeditated murder and conspiracy to commit murder. *Warner*, 2014 WL 2553303, at *6. First, to support Sampson's conviction for first-degree murder under an aiding and abetting theory, the state court cited White's testimony that Sampson directed Warner to kill Buck. *Id.* The court was unpersuaded by Sampson's argument that the evidence showed only that he instructed Warner to "shoot" Buck, not to "kill" him. White testified that she was certain Sampson used the word "kill" and the court of appeals noted that her credibility was for the jury to resolve. *Id.* Second, the Michigan Court of Appeals held that evidence that Sampson and Buck were physically fighting before Sampson directed Warner to check Buck's pockets for Sampson's gun and that Sampson told Warner to shoot Buck if he found the gun, was sufficient to show that Sampson and Warner together agreed to commit the offense of murder. *Id.*

Sampson's challenge to the Michigan Court of Appeals' decision rests upon his contention that White's testimony was simply not credible. But this Court must not "reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *Brown*, 567 F.3d at 204.  The *Jackson* standard "leaves juries broad discretion in deciding what inferences

to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 566 U.S. at 655 (2012) (quoting *Jackson*, 443 U.S. at 319).

Applying AEDPA's deferential standard of review, the Court finds that the Michigan Court of Appeals' sufficiency determination is not contrary to, or an unreasonable application of, *Jackson*.

## C.

Respondent argues that Sampson's third, fifth, sixth, and eighth claims as well as a portion of his seventh claim (regarding his right to a public trial) are unexhausted and, because no avenue remains for state court exhaustion, they are procedurally defaulted.

A prisoner seeking federal habeas relief must first exhaust his state court remedies by fairly presenting the substance of each federal constitutional claim in state court. 28 U.S.C. § 2254(b); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). The petitioner bears the burden of showing that state court remedies have been exhausted. *Prather v. Rees*, 822 F.2d 1418, 1420 n.3 (6th Cir. 1987). If a petitioner "fails to present his claims to the state courts and . . . is . . . barred from pursuing relief there, his petition should not be dismissed for lack of exhaustion because there are simply no remedies available for him to exhaust." *Hannah v. Conley*, 49 F.3d 1193, 1195–96 (6th Cir. 1995). But these unexhausted claims may not be presented on habeas review unless the petitioner "can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal." *Id.* at 1196 (*citing Coleman*, 501 U.S. at 750–51).

Sampson attempted to raise these claims for the first time on post-conviction review in a motion to amend his motion for relief from judgment. The trial court denied Sampson leave to

11

amend. ECF No. 1 at PageID.4–5. Because the trial court denied his motion to add these claims, the claims were not properly placed before the trial court and they are unexhausted. *See* 28 U.S.C. § 2254(b)(1); *Garcia-Medina v. McKee*, No. 1:09-CV-36, 2014 WL 1255960, at *20 (W.D. Mich. Mar. 26, 2014) (claims raised in rejected motion to amend motion for relief from judgment considered unexhausted).

Sampson can no longer exhaust these claims in state court. Before filing his Habeas Petition, Sampson had already filed a motion for relief from judgment in the state trial court, and state law prohibits filing a successive motion. Mich. Ct. R. 6.502(G)(1). The fact that Petitioner attempted to present these additional claims to the state appellate courts does not change the analysis. There is a "longstanding rule in Michigan that 'issues that are not properly raised before a trial court cannot be raised on appeal absent compelling or extraordinary circumstances.'" *People v. Cain*, 498 Mich. 108, 114 (2015) (quoting *People v. Grant*, 445 Mich. 535, 546 (1994)). Because his claims were not properly raised in the trial court, they are unexhausted.

To the extent that Sampson alleges that his appellate attorney's ineffectiveness constitutes cause to excuse the default, it does not. Appellate counsel's failure to raise these claims on direct review does not excuse or explain Sampson's failure to exhaust these claims on state-court collateral review. *Gadomski v. Renico*, 258 F. App'x 781, 784 (6th Cir. 2007); *Hannah*, 49 F.3d at 1196. Thus, these claims are procedurally defaulted and barred from review unless Sampson can establish that a constitutional error resulted in a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 321 (1995). The Supreme Court has tied the miscarriage of justice exception to procedural default to a petitioner's innocence. *Id.* To make a showing of actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found the

12

petitioner guilty beyond a reasonable doubt." *Id.* at 327. Sampson fails to present new, reliable evidence in light of which no reasonable juror would have found him guilty. Therefore, the Court denies these claims.

## D.

In his fourth claim, Sampson argues that the trial court violated his right to due process and a fair trial by denying a motion to sever his trial from that of his co-defendants. As an initial matter, it does not appear that counsel filed a motion for a separate trial. Instead, counsel moved to provide Sampson a separate jury. Regardless, the governing legal standards are the same.

The Supreme Court has recognized no general right to a separate criminal trial. *See United States v. Lane*, 474 U.S. 438, 446 n.8 (1986). "Misjoinder is unconstitutional only if it results in prejudice so great as to deny a defendant his due process right to a fair trial." *LaMar v. Houk*, 798 F.3d 405, 428 (6th Cir. 2015) (citing *Lane*, 474 U.S. at 446 n.8). Courts favor the joinder of defendants because joint trials promote "the efficiency and the fairness of the criminal justice system." *Richardson v. Marsh*, 481 U.S. 200, 210 (1987). Generally, severance should be granted "'only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *Stanford v. Parker*, 266 F.3d 442, 458–59 (6th Cir. 2001) (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)). A habeas petitioner seeking relief on the basis of a trial court's failure to provide a separate jury from his co-defendant "bears a very heavy burden." *Id.* at 459.

The Michigan Court of Appeals considered this claim on direct appeal and denied relief, finding that there was no need for separate juries. The court explained in relevant part:

> The decision whether to provide a separate jury is within the discretion of the trial court and this Court will not reverse that decision absent an abuse of discretion.

13

> *People v. Cadle* (On Remand ), 209 Mich.App 467, 469; 531 NW2d 761 (1995).
> The sole basis for the request was that evidence admissible against defendants
> Warner and Cummings under MRE 404(b)(1) did not implicate Sampson.
> However, the trial court correctly observed that any prejudice to Sampson could
> adequately be cured by an instruction informing the jury that evidence admissible
> only against one defendant could not be considered against another defendant.
> Defense counsel agreed that such an instruction "would remedy the situation," and
> the instruction was provided. Under these circumstances, the trial court did not
> abuse its discretion in denying Sampson's request for a separate jury.

*Warner*, 2014 WL 2553303, at *7.

Sampson's motion for a separate jury was based upon the admission of evidence that his co-defendants possessed controlled substances and guns when they were arrested after a traffic stop several months after the murder. Sampson fails to explain why this incident concerning unrelated charges against his codefendants was prejudicial to him, particularly because the trial court instructed the jury that evidence limited to one or some defendants should not be considered as to the other defendant(s). *See United States v. Harvey*, 653 F.3d 388, 396 (6th Cir. 2011) ("Jurors are presumed to follow instructions."). In short, none of Sampson's constitutional rights were implicated by a joint trial. It constituted a reasonable application of clearly established federal law for the Michigan Court of Appeals to find that the failure to afford Sampson a separate jury did not render his proceeding fundamentally unfair.

### E.

Sampson next asserts that his trial counsel rendered ineffective assistance. Specifically, he argues that counsel was ineffective because he: (i) failed to investigate; (ii) fell asleep during trial;

(iii) failed to point out inconsistencies in Ayesha White's testimony; (iv) failed to advise Sampson about his right to testify in his own defense; and (v) failed to object to prosecutorial misconduct.[1]

An ineffective assistance of counsel claim has two components. *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner must show that counsel's performance was deficient and that the deficiency prejudiced the defense. *Id.* at 687. To establish deficient representation, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. In order to establish prejudice, a petitioner must show that, but for the constitutionally deficient representation, there is a "reasonable probability" that the outcome of the proceeding would have been different. *Id.* at 694.

**1.**

Sampson first argues that counsel was ineffective for failing to investigate two potential alibi witnesses and for failing to impeach prosecution witness Dalon McClinton with evidence that McClinton had fired a gun at Sampson and Buck in 2006. The Michigan Court of Appeals denied relief as to both claims.

First, the state court held that Sampson failed to demonstrate the necessary factual support for his alibi-witness claim because he did not submit an affidavit from either proposed witness to show what their testimony would have been. *Warner*, 2014 WL 2553303, at *8. The state court reasonably concluded that Sampson failed to satisfy *Strickland*'s prejudice prong absent such an offer of proof. *Tinsley v. Million*, 399 F.3d 796, 810 (6th Cir. 2005).

---

[1] Sampson's last ineffective assistance of counsel claim concerning his right to a public trial is procedurally defaulted, as discussed *supra*.

15

Second, the state court rejected Sampson's argument that counsel was ineffective for failing to impeach witness Dalon McClinton. The state court described McClinton as "a reluctant prosecution witness whose testimony was generally favorable to Sampson" and concluded:

> Because McClinton's testimony was not particularly significant to the outcome of the trial and was generally favorable to Sampson, there is no basis for concluding that defense counsel's failure to elicit evidence of the 2006 shooting incident was either unsound strategy or deprived Sampson of a substantial defense.

*Warner*, 2014 WL 2553303, at *8.

The Michigan Court of Appeals' resolution of this claim was not contrary to or an unreasonable application of *Strickland*. Counsel reasonably could have concluded that attempting to impeach McClinton might result in diluting or negating the favorable testimony. A decision not to take that risk is within the wide range of competent representation.

## 2.

Next, Sampson argues that his attorney was ineffective because he slept during portions of the trial. He maintains that he is entitled to a presumption of prejudice because this conduct amounted to the denial of counsel during a critical stage of his trial. *See United States v. Cronic*, 466 U.S. 648 (1948).

Sampson raised this issue during his sentencing hearing, complaining that his defense attorney slept during his "whole trial pretty much." ECF No. 8-14 at PageID.1412. Defense counsel Lyle Harris explained that he never fell asleep during the trial, but sometimes had difficulty breathing causing him to wheeze. *Id.* at PageID.1413. The trial judge stated that she heard sounds of wheezing coming from counsel. *Id.* She asked her deputy to investigate and was told that counsel had breathing problems and was not sleeping. *Id.* at PageID.1414–15. The judge also cited defense counsel's closing argument as evidence that counsel was not sleeping during the trial because the

closing showed knowledge of the details of the case and testimony given. *Id.* The trial court then proceeded with sentencing.

On direct appeal, the Michigan Court of Appeals remanded the case to the trial court for an evidentiary hearing and decision regarding whether Sampson was denied the effective assistance of counsel. *People v. Sampson*, No. 315252 (Mich. Ct. App. July 19, 2013) (ECF No. 8-18 at PageID.1666).

The trial court (though not the judge who presided over the trial) held an evidentiary hearing over the course of three days, hearing from ten witnesses, including the prosecutor, Sampson's defense attorney, both co-defendants' attorneys, and Sampson. The Michigan Court of Appeals summarized the relevant testimony on remand as follows:

> Witnesses testified that Sampson's counsel sometimes appeared to be inattentive or sleeping during portions of the trial, and some claimed to have heard sounds similar to snoring. Sampson's counsel denied sleeping during trial, but explained that he may have appeared inattentive or sleeping at times because a breathing problem caused him to wheeze and because he sometimes closed his eyes to listen intently to testimony. The court presiding over the trial stated that it did not see counsel asleep, nor did the prosecuting attorney.

*Warner*, 2014 WL 2553303, at *10.

The trial court concluded that the presumption of prejudice did not apply because the evidence did not establish that counsel fell asleep for a duration sufficient to constitute a denial of counsel. *Id.* The trial court also held that Sampson failed to establish prejudice. *Id.* The Michigan Court of Appeals assumed for purposes of its analysis that defense counsel fell asleep during the portions of the trial alleged by Sampson. *Id.* The state court, nevertheless, concluded that prejudice would not be presumed because there was no evidence that counsel slept during a substantial portion of the trial. *Id.*

The Michigan Court of Appeals' decision is in accord with the Sixth Circuit's decision in *Muniz v. Smith*, 647 F.3d 619 (6th Cir. 2011). In *Muniz*, the Sixth Circuit held that a petitioner "must show that his attorney slept through a substantial portion of the trial for the . . . presumption of prejudice to attach." *Id.* at 625–26. Even assuming, as the state court did, that counsel slept through a portion of the trial, the state reasonably concluded that the presumption of prejudice did not apply because "there was no finding or evidence that defendant's counsel slept during a substantial portion of the trial." *Warner*, 2014 WL 2553303, at *10. Additionally, the Supreme Court has not held that the *Cronic* presumption of prejudice must be applied where counsel falls asleep during portions of a trial. The Michigan Court of Appeals, therefore, could not have misapplied or unreasonably applied clearly established federal law by declining to apply *Cronic* here.

Turning to *Strickland*'s prejudice prong, the Michigan Court of Appeals held that Sampson was not prejudiced by defense counsel's actions, reasoning, in pertinent part:

> The trial court observed that the record disclosed that counsel did "a substantial cross-examination" of White, which encompassed matters that had not already been covered by other defense attorneys. The record indicates that Sampson's attorney was the second defense attorney to cross-examine White. Warner's counsel initially cross-examined White, followed by Sampson's counsel, and then Cummings's attorney.[4] At the evidentiary hearing, Sampson was unable to identify any particular points that he wanted counsel to explore with White, other than the color of the van that was set on fire. However, … Sampson's counsel did cross-examine White on this subject, eliciting that she had described the van as green, and using photographs of the van to elicit her admission that the photos showed that the van was actually red. In addition, during the prosecutor's direct examination of White, Sampson's counsel interposed appropriate objections to White's direct examination testimony. This record discloses that defense counsel was attentive and effective during the testimony of White, the prosecution's key witness.
>
> Sampson also put forward evidence at the remand hearing that defense counsel was asleep during the testimony of witnesses Ramon Files, Felicia Norman, and the medical examiner. The record discloses that Warner's counsel conducted most of

18

the cross-examination of the medical examiner. After he finished, Sampson's counsel declined to ask any further questions, while Cummings's attorney limited his cross-examination to only two questions. This record supports the trial court's determination that further cross-examination by Sampson's attorney was not necessary because Warner's counsel had already cross-examined the witness. Indeed, on appeal, Sampson does not identify any additional questions that he believes his counsel should have asked the medical examiner and failed to do so.

Likewise, the record indicates that Sampson's counsel actively participated in the cross-examination of Felicia Norman, eliciting that Norman had known White for 17 years, that Norman had known White to drink on occasion and had observed White drunk, that White appeared "high" when she initially told Norman about the events that she observed on the night of the offense, and that White used the word "shoot" and not "kill" when White described what she heard Sampson say to Warner. Sampson's counsel later participated in recross-examination of Norman, eliciting that Norman did not tell White to call the police after White told Norman what happened. Although Sampson's counsel did not cross-examine witness Ramon Files, that witness's testimony was limited to the incident in September 2011 when Warner and Cummings appeared at White's house. Because Sampson was not involved in that incident, there was no reason for Sampson's counsel to cross-examine him. Again, Sampson does not identify any questions that he believes counsel should have asked Files and failed to do so.

. . . [T]he record also discloses that Sampson's attorney gave a comprehensive closing argument that reflected his awareness of the material issues and evidence in the case. In light of this record, we find no clear err[or] in the trial court's findings that (1) there was no complete denial of counsel during trial, and (2) to the extent that counsel "did happen to doze off during a couple portions of the trial," Sampson failed to demonstrate any resulting prejudice. Thus, the trial court did not err in rejecting Sampson's claim.

[4] Warner's counsel's cross-examination consists of 70 transcript pages, Sampson's counsel's cross-examination consists of 23 transcript pages, and Cummings's counsel's cross-examination consists of three pages.

*Warner*, 2014 WL 2553303, at *10–12.

The Court finds no basis for habeas relief under *Strickland*. The state court reasonably concluded that Sampson failed to establish prejudice after properly considering evidence that defense counsel was actively engaged throughout the trial, including counsel's cross-examination

19

of witnesses, his objections, and his familiarity with the testimony as evidenced in closing argument. Habeas relief is denied on this claim.

### 3.

The Michigan Court of Appeals also denied the claim that counsel was ineffective for failing to point out the inconsistencies in White's testimony. *Warner*, 2014 WL 2553303, at *9. The state court noted that counsel repeatedly and effectively highlighted flaws and inconsistencies in White's testimony including that she consumed ecstasy and tequila on the night of the offense, she misidentified the color of the van, inconsistently described where the shooting occurred, and failed to contact police after she witnessed the murder. *Id.* Sampson failed to identify additional questions or arguments that counsel should have made. *Id.* The record supports the state court's assessment of counsel's performance and relief is denied on this claim.

### 4.

Next, Sampson argues that his attorney incorrectly informed him that, if he testified, the prosecutor could impeach him with his prior convictions for felony firearm, carrying a concealed weapon, and his juvenile adjudications. Defense counsel filed a pretrial motion to suppress Sampson's prior convictions for unlawfully driving away an automobile, receiving or concealing a stolen motor vehicle, and any other convictions that might be used to impeach Sampson under Michigan Rule of Evidence 609. *See* ECF No. 8-4 at PageID.285–86. The trial court denied the motion. *Id.* at PageID.287. At trial, Sampson stated on the record that he understood that he had a right to testify in his own defense, but declined to do so. ECF No. 8-11 at PageID.1215–16.

Sampson claims that he wanted to testify in his own defense, but his attorney incorrectly advised him that if he did so the prosecutor would then introduce *all* of his prior convictions,

including his convictions for felony firearm, carrying a concealed weapon, and his juvenile

adjudications. *See* ECF No. 8-18 at PageID.1732–33. Under Michigan law, Sampson's convictions

for felony firearm, carrying a concealed weapon and his juvenile convictions were inadmissible

for impeachment purposes. *Warner*, 2014 WL 2553303, at *9. Nevertheless, the Michigan Court

of Appeals denied relief because Sampson failed to show that his attorney incorrectly advised him

about the admissibility of these convictions:

> [B]ecause the record discloses that defense counsel and Sampson discussed
> whether Sampson would testify, that counsel was aware of the impeachment issue
> by seeking a pretrial ruling regarding the admissibility of Sampson's prior
> convictions for receiving or concealing stolen property and UDAA, and it is not
> apparent from the record that counsel misadvised Sampson regarding the use of his
> prior juvenile adjudications and convictions for carrying a concealed weapon and
> felony-firearm, we conclude that Sampson has failed to overcome the presumption
> that counsel's advice was within the range of professional competence.

*Warner*, 2014 WL 2553303, at *9.

It was not unreasonable for the state court to conclude that Sampson failed to rebut the

presumption that defense counsel rendered adequate assistance. *Strickland*, 466 U.S. at 690.

Sampson fails to show that counsel provided incorrect advice and, in any event, it would have been

reasonable for counsel to conclude that the convictions which were the subject of the motion to

suppress and held to be admissible were sufficient to counsel Sampson against testifying. The state

court's conclusion—that Sampson failed to show his attorney performed deficiently concerning

the prior convictions or that Sampson was prejudiced as a result—was not contrary to or an

unreasonable application of *Strickland*.

### 5.

Sampson next argues that counsel was ineffective in failing to object to the prosecutor's

civic duty argument. The Michigan Court of Appeals held that, because the record did not support

a finding that the prosecutor engaged in misconduct, Sampson could not show that counsel was ineffective for not objecting. *Warner*, 2014 WL 2553303, at *9 n.2. Sampson has not shown the state court's disposition of this claim was unreasonable.

**F.**

Finally, Sampson argues that his rights to due process and a fair trial were violated when the trial court and defense counsel refused to provide him with a copy of the trial transcripts. He claims the transcripts were necessary so that he could submit a pro se brief on appeal. A criminal defendant has no federal constitutional right to self-representation on direct appeal. *Martinez v. Court of Appeal of California*, 528 U.S. 152, 163 (2000). Thus, there is no constitutional right to submit a pro se appellate brief on direct appeal in addition to a brief submitted by appellate counsel. *See McMeans v. Brigano*, 228 F.3d 674, 684 (6th Cir. 2000). By accepting the assistance of counsel on appeal, Petitioner waived his right to present pro se briefs and other pleadings during his direct appeal. *Myers v. Johnson*, 76 F.3d 1330, 1334-35 (5th Cir. 1996); *see also Meriweather v. Burton*, No. 15-1126, 2015 WL 7450068, at *1 (6th Cir. Nov. 24, 2015) ("[T]here is no constitutional right to file a pro se supplemental brief in addition to a brief that is filed by counsel."); *Green v. Chapman*, No. 20-1158, 2020 WL 4875317, *5 (6th Cir. June 29, 2020) (holding that petitioner did not have constitutional right to transcripts so he could submit a *pro se* brief on appeal because he was represented by counsel and criminal defendants do not have a constitutional right to "hybrid representation") (quotation omitted). Any failure by appellate counsel or the trial court to provide Sampson with the trial transcripts, therefore, did not violate his constitutional rights.

22

**IV.**

Before Sampson may appeal this decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). When relief is denied on procedural grounds, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and "that jurists of reason would find it debatable whether the court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. Nor would reasonable jurists debate the correctness of the Court's procedural ruling. The Court declines to issue a certificate of appealability.

**V.**

Sampson has filed a motion for release on bond pending adjudication of his petition and motion for immediate consideration of his motion for release. ECF Nos. 11, 12. He seeks release on bond because of the ongoing COVID-19 pandemic. He claims he is at increased risk of serious illness because he suffers from severe asthma.

To obtain release on bond, Sampson must demonstrate (1) "a substantial claim of law based on the facts surrounding the petition" and (2) "'some circumstance making [the motion for bail]

23

exceptional and deserving of special treatment in the interests of justice.'" *Dotson v. Clark*, 900

F.2d 77, 79 (6th Cir. 1990) (quoting *Aronson v. May*, 85 S. Ct. 3, 5 (1964)). Given that the Court

is denying habeas relief, Sampson does not satisfy this standard. Accordingly, the motions will be

denied.

## VI.

For the reasons given above, **IT IS ORDERED** that the Petition for Writ of Habeas

Corpus, ECF No. 1, and a Certificate of Appealability are **DENIED**.

It is further **ORDERED** that Petitioner's Motion for Appeal Bond, ECF No. 11, and

Motion for Immediate Consideration of Motion for Appeal Bond, ECF No. 12, are **DENIED** as

moot.

It is further **ORDERED** that Petitioner may proceed *in forma pauperis* on appeal because

an appeal may be taken in good faith. 28 U.S.C. § 1915(a)(3).


Dated: March 22, 2021                                       s/Thomas L. Ludington
                                                            THOMAS L. LUDINGTON
                                                            United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was
served upon each attorney of record herein by electronic means
and to **Timothy Eugene Sampson** #492307, BELLAMY CREEK
CORRECTIONAL FACILITY, 1727 WEST BLUEWATER
HIGHWAY, IONIA, MI 48846 by first class U.S. mail on March 22,
2021.

                                    s/Kelly Winslow
                                    KELLY WINSLOW, Case Manager